IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| v. | § § | 1:23-CR-43-RP-1 |
| (1) ABRAHAM YUSUFF, | § § | |
| Defendant. | § § | |

**ORDER**

Before the Court is Defendant Abraham Yusuff's ("Yusuff") Motion To Compel Discovery. (Dkt. 241). The United States of America (the "Government") filed a response in opposition to the motion. (Dkt. 248). For the reasons stated below, the Court denies the motion.

**I. BACKGROUND**

On March 7, 2023, a federal grand jury sitting in the Western District of Texas returned a sealed, 77-count indictment against Yusuff and six co-defendants. (Dkt. 3). Yusuff was charged in 62 of the 77 counts: Conspiracy to Commit Fraud, in violation of 18 U.S.C. § 1349 (Count 1); Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h) (Count 2); Mail Fraud, in violation of 18 U.S.C. § 1341 (Counts 3–17); Wire Fraud, in violation of 18 U.S.C. § 1343 (Counts 18–31); Access Device Fraud, in violation of 18 U.S.C. § 1029(a)(2) (Count 35); and Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A (Counts 42–59 and 66–77). (*Id.*). These charges stem from Yusuff's alleged involvement as a leader in a $111 million stolen identity refund fraud scheme. (*Id.*). Trial is scheduled to begin on March 25, 2024. (Dkt. 211).

On February 15, 2024, Yusuff filed a Motion To Compel Discovery. (Mot., Dkt. 241). Yusuff makes two requests: (1) that the Government should be compelled to change the manner in which the Government's thousands of PDF documents were produced during earlier discovery; and (2) that the Government should be compelled to provide to Yusuff a list of unindicted

1

coconspirators whom the Government plans to use as witnesses and any evidence regarding prior crimes, wrongs, or other bad acts of any such witness. (*Id.*).

On February 26, 2024, the Government filed a response in opposition to the motion. (Resp., Dkt. 248). The Government argues that: (1) it has met its discovery requirements; and (2) it will disclose, a week before trial begins, a list of unindicted coconspirators it intends to call as witnesses and any evidence regarding their prior crimes, wrongs, or other bad acts. (*Id.*).

## II. LEGAL STANDARD

The scope of discovery is controlled by Federal Rule of Criminal Procedure 16, under which the Government is required to produce several categories of records. Further, the Government has several other requirements to produce evidence to defendants, including under *Brady v. Maryland*, 373 U.S. 83 (1963) (hereinafter "*Brady*"); *Giglio v. United States*, 405 U.S. 150 (1972) (hereinafter "*Giglio*"); and the Jencks Act, 18 U.S.C. § 3500 (hereinafter the "Jencks Act").

## III. DISCUSSION

Yusuff asks the Court to compel the Government to provide two types of discovery: (1) a different format for the Government's thousands of previously produced PDF documents; and (2) a list of unindicted coconspirators whom the Government plans to use as witnesses and any evidence regarding their prior crimes, wrongs, or other bad acts. (Mot., Dkt. 241). In response, the Government argues that: (1) it has met its discovery requirements; and (2) it will disclose, a week before trial begins, a list of unindicted coconspirators it intends to call as witnesses and any evidence regarding their prior crimes, wrongs, or other bad acts. (Resp., Dkt. 248). The Court will address each of Yusuff's requests in turn.

### A. The Document Production Format

When a criminal defendant requests that the Government provide an item that is material to preparing his or her defense, the Government must make the item available for inspection and

copying, so long as it is within the Government's possession, custody, or control. Fed. R. Crim. P. 16(a)(1)(E)(i). Thus far, the Government has made four discovery productions to Yusuff, with the bulk of the documents consisting of the Government's initial production in April 2023—approximately 272,200 pages of discovery from the Government's Relativity discovery database and approximately 2.7 TB of forensic evidence from electronic devices seized under search warrants. (Resp., Dkt. 248, at 2). The Government's first supplemental production, in October 2023, contained approximately 4,300 pages. (*Id.* at 2–3). The Government's second and third supplemental productions, in November 2023, contained approximately 770 pages and 90 pages, respectively. (*Id.* at 3). In total, the Government has produced approximately 278,000 pages from its Relativity database, along with the 2.7 TB of forensic evidence. (*Id.* at 2–3).

Yusuff argues that the Government should be forced to provide its thousands of previously produced PDF documents in a different format. Yusuff asks the Court to compel the Government to produce the documents in Optical Character Recognition ("OCR") format and with metadata. (Mot., Dkt. 241, at 1–2). The Government asserts that it "has already produced its [electronically stored information] in bates-stamped pdf format, native format, and Relativity load files and has provided a discovery index." (Resp., Dkt. 248, at 1). Further, the Government states that it "has offered on multiple occasions to assist defense counsel in navigating the voluminous discovery which Yusuff's counsel has not accepted." (*Id.*).

Rule 16 does not dictate a manner in which the Government must produce its document production. *United States v. Warshak*, 631 F.3d 266, 296 (6th Cir. 2010) ("Federal Rule of Criminal Procedure 16, which governs discovery in criminal cases, is entirely silent on the issue of the form that discovery must take; it contains no indication that documents must be organized or indexed."). The Government has used Relativity for its document production, which is a commonly used eDiscovery software program. (Resp., Dkt. 248, at 4). The Government provided Yusuff with three

versions of the documents: (1) Relativity load-ready files, (2) PDF bates stamped files alongside a searchable index of the documents, and (3) a production version of the native files. (*Id.*).

Yusuff requests that the Government provide the documents in OCR format, (Mot., Dkt. 241, at 1–2), but the Government has argued that it does not typically OCR PDF files because of the time needed to do so, the additional size this process adds to the files, and the usual lack of necessity for doing so. (Resp., Dkt. 248, at 5). Further, as the Government points out, counsel for Yusuff could OCR the files themselves. (*Id.*). The Court agrees with the Government. The Government has provided compelling reasons why it did not OCR the documents, and there is nothing preventing counsel for Yusuff from OCR-ing the files. Accordingly, the Court will not compel the Government to provide Yusuff with the previously produced documents in OCR format.

Yusuff also argues that the Government's production lacks metadata. (Mot., Dkt. 241, at 1–2). As the Government points out, Yusuff provides no reasoning for why he needs the metadata, as the bulk of the Government's productions to date consists of certified business records from banks, credit card companies, and car auction companies, as well as public records from the Internal Revenue Service. (Resp., Dkt. 248, at 5). The Government has provided Yusuff with lists of the metadata from these documents in a discovery index and a spreadsheet covering additional metadata not included in the index. (*Id.* at 6). Further, to the extent metadata is contained in the forensic evidence from electronic devices seized under search warrants, the Government notes that Yusuff has it, as the Government did not generate or alter these documents before producing them to him. (*Id.*). Accordingly, the Court finds that the Government has provided the metadata in the document production to Yusuff to the best of its abilities.

The Court finds that the Government's disclosures have complied with Rule 16, which is silent as to the manner in which the Government needs to produce its documents. Accordingly, the Court will deny Yusuff's request for OCR-enabled and metadata-containing documents, because

4

counsel for Yusuff is capable of OCR-ing the documents themselves and because the Government has already provided the metadata it has to Yusuff.

### B. The Witness List and Accompanying Evidence

The Government is not required to disclose the names and addresses of its witnesses prior to trial. *See* Fed. R. Crim. P. 16; *see also Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) (there is no general constitutional right to pretrial discovery in a criminal case); *United States v. Aguilar*, 503 F.3d 431, 435 (5th Cir. 2007) (same); *United States v. Fischel*, 686 F.2d 1082, 1091 (5th Cir. 1982) ("Rule 16 . . . makes no provision for the production of the names and addresses of witnesses for the government."); *United States v. Miller*, 698 F.3d 699, 704 (8th Cir. 2012) ("In 1975, Congress amended Rule 16 to eliminate a requirement that the government disclose its witnesses prior to trial."). However, under *Giglio*, the United States has a duty to disclose evidence bearing on its witnesses' credibility, including plea agreements and witnesses' criminal history. *See also United States v. Sanfilippo*, 564 F.2d 176, 178 (5th Cir. 1977); *East v. Johnson*, 55 F.3d 996, 1003 (5th Cir. 1995).

Yusuff requests that the Court compel the Government to produce a list of unindicted coconspirators whom the Government plans to use as witnesses and any evidence regarding their prior crimes, wrongs, or other bad acts. (Mot., Dkt. 241). The Government has indicated that it is only opposed to the timing of Yusuff's request, not the substance of the request. (Resp., Dkt. 248, at 1). The Government has promised to disclose, no later than one week prior to trial, a list of unindicted coconspirators it intends to call as witnesses and any evidence regarding their prior crimes, wrongs, or other bad acts. (*Id.* at 6–7). Further, the Government notes that it is waiting until closer to trial to disclose this information "due to Yusuff's history of contacting potential witnesses in obstructive manners." (*Id.* at 7). Insofar as Yusuff seeks earlier discovery of these materials, his motion is denied.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Yusuff's Motion To Compel Discovery, (Dkt. 241), is **DENIED**.

**SIGNED** on March 11, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE